UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES H. WOODS Jr.,

    Plaintiff in pro per,

Case No. 10-13215

District Judge Avern Cohn

v.

Magistrate Judge R. Steven Whalen

NEIGHBORHOOD LEGAL SERVICES,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant's Motion for Summary Judgment [Doc. #42], filed on January 25, 2012, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed suit in this Court on August 13, 2010, alleging violations of: 1) Title VII of the Civil Rights Act of 1962, 42 U.S.C. § 2000e, *et seq.*; 2) The Elliot Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101, *et seq.***;** and 3) common law libel and defamation, M.C.L. § 600.2911 (codified in part).  Plaintiff seeks compensatory and punitive damages. *See Plaintiff's Amended Complaint*, 61-78.

The facts underlying this case are as follows.  Upon enrollment in a federally funded program for mature workers, 42 U.S.C. § 3056 *et seq.* ("Older American Community Service Employment Program"), Plaintiff was referred to the Detroit Urban League ("DUL") and placed under the supervision of employment counselor Angelique Rawls.  *Plaintiff's Amended Complaint*, 3, 6.  The DUL arranged for Plaintiff to interview for a job training

-1-

program at Neighborhood Legal Services ("NLS")[1]. *Id.*, 6; *see also* Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 5.

On June 18, 2008, Plaintiff was interviewed by NLS Housing Director Ms. Jean Griggs. *Plaintiff's Amended Complaint*, 6; *see also* Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 5. NLS interviewed Plaintiff for a general job training program, and not for training directed at a specific NLS position. Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 9. Plaintiff concedes that he sought training in "clerical and paralegal positions." *Plaintiff's Amended Complaint*, 7. However, Plaintiff alleges that at the June 2008 interview, Ms. Griggs wrongfully failed to notify him of an upcoming job vacancy for the position of Housing Counselor at NLS offices. *Id.* Plaintiff asserts that Ms. Griggs' alleged "concealment" of the Housing Counselor position amounted to a violation of both Title VII and the Elliot-Larsen Civil Rights Act. *See Plaintiff's Amended Complaint*, 14. Ms. Griggs, however, states that Plaintiff did not indicate that he was seeking training for any particular job during the June 2008 interview. Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 9.

Nevertheless, NLS agreed to take Plaintiff on as a job trainee and he began work in June 2008. He worked about twenty hours per week until his termination in January 2009. The DUL provided Plaintiff with a stipend during the training program, and the parties agree that he was never considered to be an employee of NLS. *Plaintiff's Amended Complaint*, 15; *see also* Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 8. As a job trainee, Plaintiff performed various tasks at NLS such as making copies and assembling client intake files. Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 10. During the Fall of 2008, Plaintiff trained as a bankruptcy paralegal under NLS employee John Holler. *Plaintiff's Amended Complaint*, 38; *See also*

---

[1]NLS is a state and federally funded non-profit organization that provides legal and housing services for underprivileged individuals throughout the Detroit area. Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 10.

Defendant's Exhibit #2, *Holler Affidavit,* ¶ 3. While under Holler, he was trained to file documents and to perform basic data entry. Defendant's Exhibit #2, *Holler Affidavit,* ¶ 5, ¶ 10. Plaintiff also attended NLS meetings and social events.

Plaintiff alleges that he was discriminated against as an NLS job trainee on the basis of his age and race in numerous ways. Plaintiff asserts that from the outset of the training program, Ms. Griggs was aware of the upcoming Housing Counselor vacancy, yet she improperly failed to offer him any relevant training. *Plaintiff's Amended Complaint*, 8. He contends that Ms. Griggs had no legitimate reason for failing to advertise the vacancy or for excluding him from training as a Housing Counselor. *Id.*, 9. Next, he argues that from June 2008 to October 2008, he was not provided with a computer terminal, despite the fact that two younger females in the office had individual computer access. *Id.*,12-13. Defendant concedes that Plaintiff did not always have access to a computer, but states that the two female workers in question were given priority because, unlike Plaintiff, they were NLS employees. *Defendant's Answer to Amended Complaint [Dock. #15]*, ¶ 17. Defendant contends that Plaintiff was trained fairly in relation to other trainees. *Id.*

Plaintiff alleges that because he was not given appropriate training, he was prevented from gaining the necessary experience to be considered for the Housing Counselor position. *Plaintiff's Amended Complaint*, 14. Specifically, he claims that he was not afforded the opportunity to gain experience performing intake interviews with new housing clients. *Id.* at 13. He also asserts that he was denied one-on-one computer training with programs such as Microsoft Excel. *Id.* Contrary to Plaintiff's assertion, however, Ms. Griggs states that she gave him "some" Microsoft Excel training. *Exhibit #1, Griggs Affidavit*, ¶ 15. *Id.* at 14.

Additionally, Plaintiff alleges that he was mistreated by NLS Secretary Ms. Jaqi Sekander on three separate occasions. *Plaintiff's Amended Complaint*, 28-42. First, Plaintiff

claims that in November 2008, Ms. Sekander intentionally obstructed the entrance to his office and verbally expressed her animosity toward him. *Id.,* 28. Second, he alleges that in December 2008, Ms. Sekander aggressively followed him as he was leaving an NLS luncheon. *Id.,* 29. Third, he asserts that on January 22, 2009, Ms. Sekander verbally and physically harassed him after an NLS meeting. *Id.*, 30. Plaintiff contends that Ms. Sekander followed him out of an NLS conference room, stating, "you use big words," then pushed him from behind. *Id.,* 31. Plaintiff alleges that while Ms. Griggs witnessed the two leave the conference room, no NLS employee actually witnessed the altercation. *Id.*, 32. The next day Plaintiff filed a report with the Detroit Police Department alleging that Ms. Sekander had committed assault. Defendant's Exhibit #4, 1. Ms. Sekander states that the assault charge was dropped after she provided the police with a written statement. Defendant's Exhibit #14, *Sekander Affidavit*, ¶ 9. Plaintiff points out that Ms. Sekander is a younger Caucasian female. *Plaintiff's Amended Complaint*, 28.

On January 27, 2009, NLS terminated Plaintiff as a job trainee. Defendant's Exhibit #5, 1. Ms. Griggs states that she terminated Plaintiff after learning about the incident with Ms. Sekander, and reasoned that Plaintiff's "thin-skinned personality" disrupted the NLS office. Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 40. In conjunction with conducting an exit interview with Plaintiff, Ms. Griggs corresponded with the DUL in order to discuss Plaintiff's termination. On January 27, 2009 Ms. Griggs spoke on the telephone with DUL counselor Gregory McPherson regarding Plaintiff's termination. Defendant's Exhibit # 11. Mr. McPherson's record of the conversation indicates that Plaintiff was terminated as a result of his reaction to the incident with Ms. Sekander and because of his "thin-skinned" personality. *Id.* On February 5, 2009 Ms. Griggs submitted an Exit Evaluation worksheet to DUL finding Plaintiff's job performance to be either "satisfactory" or "more than

satisfactory" in most categories. Defendant's Exhibit # 12. However, the evaluation indicates that Plaintiff "needs improvement"getting along with others, performing under stress, adjusting to changes, and communicating effectively. *Id.*

Based on Griggs' communications with DUL, Plaintiff argues that she is liable for defamation and libel pursuant to M.C.L. § 600.2911 *et seq. Plaintiff's Amended Complaint,* 43. Plaintiff asserts that Ms. Griggs' negative comments regarding his performance are false and unsubstantiated and that they were made in order to justify her decision to terminate his training program. *Id.* He contends that Griggs' evaluation has caused substantial mental anguish and has interfered with his ability to secure a job. *Id.*, 52.

In September 2009, more than seven months after the termination of Plaintiff's training program, NLS hired Mr. Ron Frank to fill the Housing Counselor position in question. Defendant's Exhibit # 13, ¶ 3. Plaintiff claims that Ms. Griggs improperly offered the position to her "younger aged relative." *Plaintiff's Amended Complaint*, 11. Griggs denies any relation to Mr. Frank. Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 46. Defendant asserts that the Housing Counselor position requires certified training from the Michigan State Housing Development Authority ("MSHDA"), training of which Mr. Frank completed in April 2007. *Defendant's Motion for Summary Judgment*, 6; *see also* Defendant's Exhibit #6. Plaintiff does not claim to have attained MSHDA certification.

Defendant has filed a Motion for Summary Judgment seeking dismissal of the Title VII and ELCRA claims for failure to establish a prima facie case and for failure to demonstrate that Defendant's reason for refusing to hire Plaintiff was pre-textual. Defendant contends that Plaintiff's hostile work environment claim, brought under Title VII and ELCRA, should also be dismissed for failure to establish a prima facie case. Defendant argues that Plaintiff's defamation and libel claim should be dismissed because the

communications in question were: 1) actually true; 2) privileged; and 3) not defamatory.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing

"evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988).

Because Plaintiff has offered no evidence that anyone in a decision-making position expressly stated a desire to terminate the trainee program based on race or age, his claim relies upon circumstantial evidence. In such case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination. Once he has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[2] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.

In order to establish a prima facie showing of discrimination based on indirect

---

[2]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

evidence under Title VII the Plaintiff must introduce sufficient evidence that (1) he was a member of the protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824. However, this factor may take various forms, depending upon the facts and allegations of a particular case. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, n.6 (1981); *Hazle v. Ford Motor Co.*, 464 Mich. 456, 463, n.6, 628 N.W.2d 515 (2001) ("the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand"); *Shah v. General Electric Co.*, 816 F.2d 264, 268-271 (6th Cir. 1987) ("However articulated, the significance of the prima facie case is that it permits an 'inference of discrimination...because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'") (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

### A. The Prima Facie Case

Defendant does not address the first two prongs of the *McDonnell Douglas* prima facie standard, and I will assume for purposes of this motion that he is a member of a protected class and that he suffered an adverse employment action. However, Plaintiff's case falters on the third and fourth prongs.

Defendant argues that Plaintiff fails to establish a prima facie case because he is not qualified for the position in question. *Defendant's Motion for Summary Judgment*, 6.

-8-

Defendant states that pursuant to a contractual agreement with the Michigan State Housing Development Authority ("MSHDA"), Housing Counselor applicants must undergo a training certification process with MSHDA. *Id.* at 7. The parties do not dispute that Plaintiff has not completed the relevant MSHDA training. Defendant highlights the fact that the hired applicant completed MSHDA training in April 2007. *Id.* Defendant also asserts that even if Plaintiff had formally applied for the position, he lacked the necessary skills and personality traits to perform the duties of a Housing Counselor. *Id.*

The Sixth Circuit has recognized that "[t]o establish that she is qualified for the position, a Title VII plaintiff need only show that she satisfied an employer's "objective" qualifications." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). Plaintiff does not dispute that the Housing Counselor position requires a MSHDA training certificate. *See* Defendant's Exhibit #10 and #10(A)[3]. Moreover, both of the current NLS Housing Counselors completed MSHDA training before applying to NLS. *See* Defendant's Exhibits # 8 and #9. Plaintiff does not contend that he has attained a MSHDA training certificate, nor does he argue that he possesses any of the necessary skills or work experience to perform the duties of a NLS Housing Counselor. And in faulting Defendant for failing to train him for the position, Plaintiff implicitly concedes that he lacked the requisite skills to work as a Housing Counselor. *Plaintiff's Amended Complaint*, 8. Therefore, Plaintiff essentially admits that he failed to meet NLS' "'objective' qualifications." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). *See also Seay v. Tennessee Valley Auth. & Craven*

---

[3]Defendant's Exhibit #10 is a contract between NLS and MSHDA. Article V § 5.2 provides that MSHDA retains "the right to determine the sufficiency of the education, competence, and experience" of NLS Housing Counselors. Exhibit #10(A) includes a series of documents entitled "Certificate Verifying Certified Counselors of the Contractor," indicating that each Housing Counselor is subject to the MSHDA's approval.

*Crowell*, 339 F.3d 454, 464 (6th Cir. 2003) ( Employee was not qualified for position of contract manager, and thus failed to establish prima facie Title VII non-selection claim, where he supplied no evidence he had supply chain management experience, and successful candidate possessed requisite experience).

Because Plaintiff is not qualified for the position in question, he fails to meet his prima facie burden, and for that reason, summary judgment for the Defendant with respect to the Title VII and ELCRA claims is appropriate.

### B. Circumstances Giving Rise to an Inference of Unlawful Discrimination

Assuming for the sake of argument that Plaintiff is qualified, or in this instance, that Defendant wrongfully prevented him from becoming qualified, his claim nevertheless fails to satisfy the fourth prong of the *McDonnell Douglas* prima facie standard. Plaintiff makes the naked assertion that Ms. Griggs wrongfully hired her "younger aged relative," Mr. Ron Frank for the position in question[4]. *Plaintiff's Amended Complaint*, 14. Because Plaintiff was age 58 at the time he filed the Complaint (*Plaintiff's Amended Complaint*, 3) while Mr. Frank was age 39 when hired (Defendant's Exhibit #13, ¶ 3), and in light of the fact that both men are African American, it appears that Plaintiff alleges age-based discrimination.

The fourth prong inquires as to whether the adverse employment action was carried out under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802. This factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802,

---

[4]As noted above, Ms. Griggs denies any relation to Mr. Frank. Defendant's Exhibit #1*, Griggs Affidavit*, ¶ 46.

1824. In comparing treatment with "similarly situated" individuals, a plaintiff "must show that the 'comparables' are similarly situated in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992), that is, that the comparables must be "nearly identical" in all relevant respects. *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 700, 568 N.W.2d 64 (1997).

Ron Frank was hired in September 2009 for the Housing Counselor position in question. Defendant's Exhibit #13, ¶ 3. Unlike Plaintiff, Mr. Frank attained the MSHDA training certificate in April 2007. *See* Defendant's Exhibit # 6. Mr. Frank also had two years of experience working as a Housing Counselor when he was hired. Defendant's Exhibit #10(A). As stated above, Plaintiff does not claim to possess any relevant job experience. Moreover, it appears that Mr. Frank was hired as an external applicant rather than as an internal unpaid trainee. Therefore, Plaintiff and Mr. Frank are not "similarly situated in all respects." Accordingly, Plaintiff cannot demonstrate that an adverse employment action was carried out under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802.

Plaintiff also asserts that from the outset of his training program, NLS wrongfully concealed a job vacancy and then failed to provide him with training that allegedly would have prepared him to work as a Housing Counselor. *Plaintiff's Amended Complaint*, 9. However, Plaintiff has simply failed to demonstrate that his unpaid training program, as arranged between DUL and NLS, was tailored to any specific and/or permanent NLS position.[5] Indeed, Plaintiff concedes that at the initial interview he sought general training in "clerical and paralegal positions." *Id.*, 7. The fact that Plaintiff trained as a bankruptcy

---

[5]While Plaintiff was not compensated by NLS during his training program, he did receive a stipend from DUL. *See Plaintiff's Amended Complaint*, 15.

paralegal for a brief period during the Fall of 2008 is also a testament to the general nature of his training program. *See Plaintiff's Amended Complaint*, 38, Defendant's Exhibit #2*, Holler Affidavit,* ¶ 3.

Moreover, Plaintiff's NLS supervisor, Ms. Griggs, states that DUL did not seek an agreement from NLS stipulating that Plaintiff would be trained for a specific job. Rather, NLS merely agreed to provide him with an opportunity to gain general experience working in an office setting.[6] Defendant's Exhibit #1, *Griggs Affidavit*, ¶ 9. Ms. Griggs also states that she was not aware of Plaintiff's interest in the Housing Counselor position until he raised the issue at his January 27, 2009 exit interview. *Id.* at ¶ 29. Ms. Griggs reported that she never received an application for employment from Plaintiff. *Id.* at ¶ 28.

Plaintiff provides no support whatsoever for the allegation that in October 2008 he made a "request for full time employment at NLS offices;" additionally, he fails to demonstrate that the alleged inquiry occurred when NLS was actively seeking a new Housing Counselor. The fact that NLS hired Ron Frank as a Housing Counselor in September 2009 (Defendant's Exhibit #13*, ¶* 13) suggests that NLS had yet to initiate the application process some 11 months earlier in October 2008, when Plaintiff allegedly expressed an interest in securing employment. Moreover, there is no evidence that NLS was accepting applications for the Housing Counselor position during Plaintiff's training program. Even so, Plaintiff has failed to produce any evidence showing that he was in pursuit of employment at NLS. For example, a job application, dated cover letter, or even an email expressing an interest in employment would provide some support for Plaintiff's assertion. Plaintiff's naked

---

[6]Plaintiff lists the host agreement between DUL and NLS as an exhibit accompanying his Complaint; unfortunately, however, the document was never filed with the Court nor was it presented as an exhibit by the Defendant. Nevertheless, Plaintiff's DUL "Exit Evaluation" (Defendant's Exhibit #11*)* does not indicate that Plaintiff's training program was specific to a permanent NLS position.

allegation that Ms. Griggs "lost his request for full time employment at NLS offices," does not support a claim of intentional discrimination. *Plaintiff's Amended Complaint*, 19. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Because Plaintiff cannot demonstrate the presence of circumstances giving rise to an inference of unlawful discrimination, he fails to meet his prima facie burden, thus offering an additional basis for granting Defendant's Motion for Summary Judgment with respect to the Title VII and ELCRA claims.

### C. Hostile Work Environment

Defendant argues that Plaintiff's hostile work environment claim, brought under Title VII and ELCRA, should also be dismissed for failure to establish a prima facie case. *Defendant's Motion for Summary Judgment*, 10. Citing the five-prong test set forth in *Hafford v. Seider*, 183 F.3d 506 (6th Cir. 1999), Defendant contends that Plaintiff only succeeds in establishing the first prong- that he is a member of a protected class. *Defendant's Motion for Summary Judgment*, 11. Defendant asserts that Plaintiff fails to offer any evidence showing that the acts complained of were based on race or age**.** *Id.*

Plaintiff argues that the alleged altercations with NLS Secretary Jaqi Sekander, as discussed above, gave rise to a hostile work environment claim. *See Plaintiff's Amended Complaint*, 28-42. Additionally, Plaintiff claims that the conduct of former NLS employee Curtis Weems-Bey further contributed to the poor work environment at NLS. *Id.*, 28-30. Plaintiff alleges that Mr. Weems-Bey, whose desk was adjacent to Plaintiff's workplace, regularly argued with NLS clients on the telephone. Upon Plaintiff's request, Ms. Griggs relocated Mr. Weems Bey to an isolated office. *Id.*, 29.

To establish prima facie case of hostile work environment under Title VII, based on either race or age, the plaintiff must establish (1) he was member of a protected class; (2) he was subjected to un-welcomed harassment; (3) the harassment was based on race or age; (4) the harassment had effect of unreasonably interfering with employee's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Hafford v. Seider*, *supra*, 183 F.3d at 512. In determining whether an environment meets the appropriate threshold, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Supreme Court has made it clear that "'simple teasing,' offhand comments and isolated incidents, (unless extremely serious) will not amount to discriminatory changes in 'the terms and conditions of employment,'" and that "conduct must be extreme to amount to a change in the terms and conditions of employment ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-89 (1998).

Plaintiff has failed to demonstrate that the conduct of Mr. Weems-Bey supports an actionable hostile work environment claim. Plaintiff merely alleges that he worked next to an NLS employee who periodically argued with his clients on the telephone. *See Plaintiff's Amended Complaint*, 28-30. Plaintiff does not claim that Mr. Weems-Bey harassed him on account of his race or age; in fact, Plaintiff does not allege that Mr. Weems-Bey directed *any* aggression toward him. Rather, Plaintiff seems to assert that Weems-Bey's aggressive conduct toward his clients disrupted the office environment in general. Regardless, Plaintiff concedes that NLS management addressed the problem by relocating Mr. Weems Bey. Because Plaintiff's factual allegations against Mr. Weems-Bey do not scratch the surface of

-14-

the five prong test set forth in *Hafford*, they fail to offer any support for a hostile work environment claim.

Plaintiff also alleges that NLS Secretary Jaqi Sekander harassed him on three separate occasions. *Plaintiff's Amended Complaint*, 28-42. Plaintiff alleges that Ms. Sekander verbally expressed her animosity toward him by making statements such as "you use big words." *Id*., 31. He claims that on one occasion she physically obstructed the entrance to his office. Additionally, Plaintiff asserts that Ms. Sekdander physically assaulted him after an NLS meeting by pushing him from behind as he walked away from her. *Id.*

While Plaintiff notes that Ms. Sekander is a Caucasian female, he does not assert that any of her alleged conduct occurred on account of his race or age, and for that reason, his hostile work environment claim fails. Additionally, Plaintiff has produced no supporting evidence, such as a sworn affidavit from a co-worker confirming the events in question. Moreover, the act of obstructing the entrance to an office or closely following a co-worker out of a restaurant does not rise to the requisite level of severity. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The only act that could be considered severe is Ms. Sekander's alleged physical assault upon Plaintiff. Assuming that the assault actually occurred, Plaintiff's hostile work environment claim would need more to meet the prima facie burden. Moreover, Plaintiff only alleges that three events occurred during his seven month training program, thus, it is going too far to claim that the hostile conduct was pervasive, such that it unreasonably interfered with his day-to-day work performance. *Id*. At best, Plaintiff's allegations amount to "'simple teasing,' offhand comments and isolated incidents."[7] *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-89 (1998).

---

[7] According to NLS Housing Director Jean Griggs, Ms. Sekander did not push or assault the Plaintiff, but merely patted him on the back. *See Defendant's Exhibit 11*.

Because Plaintiff cannot meet his prima facie burden, summary judgment for the Defendant with respect to Plaintiff's hostile work environment claim is appropriate.

### D.  Defamation and Libel

In *Mino v. Clio School Dist.*, 255 Mich.App. 60, 72, 661 N.W.2d 586, 594 - 595 (2003), the Michigan Court of Appeals set forth the elements of a defamation claim (libel or slander):

> "'A communication is defamatory if, under all of the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or it deters others from associating or dealing with the individual.' *Kefgen v. Davidson,* 241 Mich.App. 611, 617, 617 N.W.2d 351 (2000). In order to establish a claim of defamation, a plaintiff must show: (1) a false or defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod). *Id.*"

Regarding libel or slander claims involving a private individual such as the Plaintiff in this case (as opposed to a public figure), M.C.L.A. 600.2911(7), provides:

> "(7) An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees."

In this case, the allegedly defamatory statement at issue was made by NLS Housing Director Jean Griggs, in a telephone call to Ms. McPherson of the DUL on January 27, 2009. Ms. McPherson's notes detailing that conversation are contained in Defendant's Exhibit 11. In this conversation, Ms. Griggs informed DUL that NLS was ending the Plaintiff's assignment. Ms. Griggs stated that following the incident with Ms. Sekander, Plaintiff filed a complaint with the Detroit Police Department. That statement, of course, is factually true. Ms. Griggs also offered the following opinions regarding the Plaintiff. She said that although Plaintiff "is not a violent person," and "has been working out as a trainee," nevertheless

"because of the clientele NLS serves, it may not be a safe environment for Mr. Woods to train in if his reactions to simple inter-office interactions are that thin-skinned or sensitive." *See also Defendant's Exhibit 1, Affidavit of Jean Griggs*, ¶ 40. In her affidavit, Ms. Griggs also states, "That I had an obligation to communicate accurately with Ms. McPherson of the Detroit Urban League regarding Mr. Woods' progress in our program and the circumstances that led to his termination." *Id.*, ¶ 41.

Plaintiff has not established a cause of action for libel or slander. It is clear that Ms. Griggs' communication with the DUL was protected by a qualified privilege, sometimes referred to as the "shared interest" doctrine. In *Swenson-Davis v. Martel,* 135 Mich.App 632, 634-635; 354 NW2d 288 (1984), the Court of Appeals addressed this doctrine as follows:

> "In general, a qualified privilege extends to all communications made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty, and embraces cases where the duty is not a legal one but is of a moral or social character of imperfect obligation. *Timmis v. Bennett,* 352 Mich. 355, 366; 89 NW2d 748 (1958)...."

In *Gonyea v. Motor Parts Federal Credit Union*, 192 Mich.App. 74, 79, 480 N.W.2d 297, 300 (1991), the Court held:

> "Likewise privileged were the statements made by Major to the two prospective employers; *an employer has a qualified privilege to divulge information regarding a former employee to a prospective employer. Moore v. St. Joseph Nursing Home, Inc.,* 184 Mich.App. 766, 768, 459 N.W.2d 100 (1990). The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. *Bufalino v. Maxon Bros., Inc.,* 368 Mich. 140, 153, 117 N.W.2d 150 (1962). Plaintiff may overcome this qualified privilege only by showing that the statement was made with actual malice, that is, knowledge of its falsity or reckless disregard of the truth." (Emphasis added).

In this case, Ms. Griggs' statement was limited in purpose and was made in a proper manner to a proper person–Ms. McPherson of the DUL–with whom she shared a common

interest. Indeed, Ms. Griggs had an obligation to provide the DUL with information about the Plaintiff. *Griggs Affidavit*, ¶ 41.

Finally, Plaintiff, a private individual, has not shown that Ms. Griggs offered her opinion negligently, as required by M.C.L.A. 600.2911(7),[8] much less that she acted with malice or reckless disregard for the truth, as required to overcome her qualified privilege. Summary judgment should therefore be granted as to Plaintiff's defamation claim.

### IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #42] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[8] That Ms. Griggs' statement represented her *opinion*, rather than objective facts, also removes it from the realm of actionable defamation. *See Fisher v. Detroit Free Press, Inc.*, 158 Mich.App. 409, 413, 404 N.W.2d 765, 767 (1985); *Mino v. Clio School Dist., supra*, 255 Mich.App. at 77 ((subjective opinion about a school superintendent's leadership style and management of the school budget was not actionable).

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Date: July 13, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 13, 2012.

James H. Woods  
16844 Lahser Rd Apt 132  
Detroit, MI 48219-3808

s/Johnetta M. Curry-Williams  
Case Manager